IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Leroy Staton,                              )
                                           )
        Petitioner,                        )        Case No. 8:11-745-TMC-JDA
                                           )
        v.                                 )        **REPORT AND RECOMMENDATION**
                                           )        **OF MAGISTRATE JUDGE**
Warden, Kershaw Correctional Institution,  )
                                           )
        Respondent.                        )
_____    )

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 22.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States
Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section
636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to
review post-trial petitions for relief and submit findings and recommendations to the District
Court.

Petitioner filed this Petition for writ of habeas corpus on March 24, 2011.[1]  [Doc. 1.]
On June 3, 2011, Respondent filed a motion for summary judgment and a return and
memorandum.  [Docs. 22, 23.]  On June 6, 2011, in accordance with an Order pursuant
to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Petitioner was advised to respond
to the motion for summary judgment and of the possible consequences if he failed to
respond adequately to Respondent's motion.  [Doc. 24.]  On August 2, 2011, Petitioner
filed a response in opposition to Respondent's motion for summary judgment.  [Doc. 33.]

_____

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the possible
filing dates in the light most favorable to Petitioner, this action was filed on March 24, 2011. [Doc. 1 at 13
(Petition dated March 24, 2011); Doc. 1-1 (letter dated March 28, 2011); Doc. 1-2 (envelope postmarked
March 25, 2011).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is currently incarcerated in the Kershaw Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Marlboro County. [*See* App. 1900.[2]]  At the December 1996 term of General Sessions, the Marlboro County Grand Jury indicted Petitioner for murder, kidnapping, criminal sexual conduct in the first degree ("CSC 1st"), and criminal conspiracy. [App. 1902–04.]   Represented by Milton M. Moore, on March 10, 1997, Petitioner proceeded to trial with five co-defendants before the Honorable Edward B. Cottingham. [App. 1–2.]  On March 18, 1997, Petitioner was found guilty of murder, kidnapping, CSC 1st, and criminal conspiracy.  [App. 1645–46.]  On March 19, 1997, Judge Cottingham sentenced Petitioner to life imprisonment for murder, a consecutive sentence of thirty years imprisonment for CSC 1st, and a concurrent sentence of five years for criminal conspiracy. [App. 1685.]  Petitioner was not sentenced on the kidnapping count, pursuant to South Carolina statutory law [*id.*]. which provides that where a life sentence is imposed on a murder indictment, no sentence shall be imposed on a kidnapping indictment.  S.C. Code Ann. § 16-3-910.

---

[2] The Appendix can be found at Docket Entries 23-1 through 23-16.

2

**Direct Appeal**

Petitioner, represented by Joseph Savitz, III, of the South Carolina Office of Appellate Defense, appealed his convictions and sentences to the South Carolina Supreme Court, which transferred the case to the South Carolina Court of Appeals [Doc. 23-23]. Petitioner raised the following issues:

> 1. The judge erred by refusing to direct a verdict acquitting appellant of kidnappping,criminal sexual conduct and murder;
>
> 2. The judge erred by refusing to sever appellant's trial from his codefendants'.

[Doc. 23-17 at 4.][3] On November 8, 2001, the South Carolina Court of Appeals affirmed Petitioner's convictions and sentences. [Doc. 23-24.] Petitioner filed a petition for rehearing on November 20, 2001 [Doc. 23-26], which was denied on January 8, 2002 [Doc. 23-27]. On February 7, 2002, Petitioner filed a petition for writ of certiorari to the South Carolina Supreme Court. [Doc. 23-28.] The South Carolina Supreme Court denied Petitioner's petition for writ of certiorari on November 21, 2002 [Doc. 23-30] and issued remittitur on November 25, 2002 [Doc. 23-31].[4]

---

[3]Petitioner attempted to file a pro se amicus brief with the appellate court [Docs. 23-19, 23-20]; however, the Court of Appeals considered only the two arguments raised by Petitioner's appellate counsel in the Final Brief of Appellant [Doc. 23-24 at 2].

[4] While the case was on direct appeal, Petitioner filed a federal habeas application, alleging the following grounds for relief: (1) Petitioner is actually innocent but was denied a fair direct appeal due to an excessive and unjustified delay by the state court to hear his appeal, and (2) the trial court lacked subject matter jurisdiction to try and convict Petitioner because he was arrested without probable cause or an arrest warrant. [Doc. 23 at 12 n.7]; *Staton v. Harrison*, 2:01-cv-2487-PMD. This action was dismissed without prejudice on March 25, 2002 by Order of the Honorable Patrick Michael Duffy. [Doc. 23 at 12 n.7]; *Staton*, 2:01-cv-2487-PMD, Docket Entry 12. On May 24, 2010, Petitioner filed a motion for authorization to file a successive habeas application in the Fourth Circuit Court of Appeals. [Doc. 23 at 25]; *see Staton*, 2:01-cv-2487-PMD, Docket Entry 15. The Fourth Circuit denied the Motion on June 22, 2010, finding the motion was unnecessary because Petitioner's previous federal habeas petition was dismissed without prejudice. [Doc. 23 at 25]; *Staton*, 2:01-cv-2487-PMD, Docket Entry 15.

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on November 19, 2003.  [App. 1743–72.]  In his application, Petitioner alleged he was unlawfully being held in custody based on the ineffective assistance of his trial counsel and his appellate counsel.  [App. 1750.]  Petitioner, through counsel, filed an amended application on July 3, 2006, alleging ineffective assistance of trial counsel based on counsel's failure (1) to argue to the jury the existence of a co-defendant's confession,[5] (2) to object to the State's closing argument asking the jurors to put themselves in the place of the victim, and (3) to object to the State's implication in its closing argument that Petitioner was guilty because two co-defendants, who served as State witnesses, had pled guilty before Petitioner's trial.  [App. 1778–81.]

On July 12, 2006, the PCR court held an evidentiary hearing into the matter.  [App. 1816–54.]  Petitioner was present at the hearing and represented by W. Keith Powell.  [App. 1816, 1819.]  Petitioner proceeded on allegations of ineffective assistance of trial counsel and that the trial court lacked subject matter jurisdiction.  [App. 1819–29.]

On July 28, 2006, the PCR court issued its decision, denying and dismissing with prejudice Petitioner's PCR application.  [App. 1855–66.]  With respect to the issues raised regarding Petitioner's trial counsel, the PCR court found Petitioner's testimony not credible and his trial counsel's testimony credible.  [App. 1865.]  The PCR court went on to state:

---

[5] Petitioner stipulated that this argument was only valid if the State had provided his trial counsel with a copy of the transcript of the confession.  [App. 1779.]  Otherwise, if the State did not provide a copy to Petitioner's trial counsel, Petitioner argued he was entitled to post-conviction relief based on prosecutorial misconduct for failure to provide his trial counsel with the confession.  [*Id.*]

4

> [T]he record does not support a finding of ineffective assistance of trial counsel. This Court also finds that, on the issues raised at the evidentiary hearing, trial counsel provided valid explanations for decisions made during the course of the trial. Furthermore, this Court finds all the other defense attorneys did an excellent job at trial of attacking the credibility of the two key State witnesses – Davis and Ransom. It is clear from the trial transcript that all the defense attorneys in this case – including trial counsel – challenged the character and veracity of both witnesses on cross-examination. Trial counsel specifically addressed the weak character of all three of the State's chief witnesses in his closing argument. (Trial transcript, pp.1574-76). Furthermore, trial counsel attempted to shift responsibility in this case away from [Petitioner] and towards Ringo Pearson. (Trial transcript, p.845, line 8 - p.846, line 16; p.1001, line 25 – p.1002, line 20; p.l577, line 16 – p.1578, line 2). Accordingly, this Court finds [Petitioner] has failed to prove the first prong of the <u>Strickland</u> test - that trial counsel failed to render reasonably effective assistance under prevailing professional norms.
>
> This Court also finds [Petitioner] has also failed to prove the second prong of <u>Strickland</u> – that he was prejudiced by trial counsel's performance. The State had a strong case against [Petitioner]. Three of the State's witnesses placed [Petitioner] at one of the key locations in this case – the trailer, the abandoned house, and the bridge where the victim's body was found. (Trial transcript, pp.601-07; pp.729-40; pp.750-60; p.891; pp.909-12). Furthermore, both Davis and Ransom specifically testified [Petitioner] was present at the party where the victim was held against her will and in the car with the victim's body when they drove out to the bridge to throw the body in the river. This Court concludes [Petitioner] has not met his burden of proving counsel failed to render reasonably effective assistance. <u>See</u> <u>Frasier v. State</u>, 351 S.C. at 389, 570 S.E.2d at 174.

[App. 1865–66.] The PCR court also determined Petitioner's subject matter jurisdiction argument lacked merit. [*See* App. 1863–64.]

On October 31, 2007, Petitioner appealed the denial of his PCR application by way of a petition for writ of certiorari to the South Carolina Supreme Court. [Doc. 23-32.]

5

Petitioner was represented in the appeal by Eleanor Duffy Cleary of the Office of Appellate Defense. [*Id.* at 1.] Petitioner raised only one issue in the petition:

> Whether trial counsel was ineffective for failing to object to the solicitor's improper "Golden Rule" closing argument, which asked jurors to put themselves in the victim's place, and there is a reasonable probability that counsel's deficiency affected the outcome of petitioner's trial?

[*Id.* at 3.] The State filed a return to the petition [Doc. 23-33], and on May 8, 2008, the South Carolina Supreme Count granted the petition for writ of certiorari [Doc. 23-35]. However, on March 23, 2009, after receiving briefs from Petitioner and the State [Docs. 23-36, 23-37], the court dismissed the writ of certiorari as improvidently granted [Doc. 23-38]. Remittitur was issued on April 8, 2009. [Doc. 23-39.]

**State Petition for Writ of Habeas Corpus**

On March 18, 2010, Petitioner filed a petition for writ of habeas corpus in the original jurisdiction of the South Carolina Supreme Court. [Doc. 23-40.] In the state habeas petition, Petitioner raised the same grounds he raises in this federal habeas petition, except for Ground 24, stated below, in which he asks this Court to review the South Carolina Supreme Court's decision denying his state habeas petition. [*Id.*] By order dated April 21, 2010, the South Carolina Supreme Court found Petitioner had not shown "a violation which in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice" and denied the petition. [Doc. 23-41 (quoting *Butler v. State*, 397 S.E.2d 87 (S.C. 1990)).]

6

**Federal Petition for Writ of Habeas Corpus**

On March 24, 2011, Petitioner filed this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:[6]

**Ground one**:     The State has covered up evidence of my actual innocence, Ringo Pearson's confession, that he **alone** kidnapped and murdered Patterson.

*Supporting facts*:     Ms. Patterson was kidnapped and murdered on November 12, 1994. On December 1, 1994, Ringo Pearson confessed to Officer Jerry Starnes that he alone kidnapped and murdered Ms. Patterson within hours of her going missing, this confession was withheld from the jury. Everything the prosecutor brought up at trial was coerced perjury and lies made up by the police. The Prosecutor coerced those people into saying things by using threats of the death penalty against Davis and Ranson and long prison terms against the others.  The state never had probable cause to arrest me because of the confession.  This was very unfair and a violation of due process.  This violated my Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to a fair trial.

**Ground two**:     The police arrest[ed] me without an arrest warrant, they had plenty of time to obtain an arrest warrant, but had no probable cause.

*Supporting facts*:     I have been in prison over fourteen years and have never been served or seen an arrest warrant.  The police must seek judicial approval to get an arrest warrant.  I have written the police, Clerk of Court, Court Administration, the solicitor, and trial attorney trying to get a copy of the arrest wa[r]rant.  On 1-22-10 the solicitor wrote me a letter back stating no arrest warrant numbers were provided in this case. The Clerk of Court wrote back on 3-8-10 that this indictment has no arrest warrant with it. This was a straight presentment. The police could not convince a magistrate that I had committed a crime. Undoubtedly he had heard that Ringo Pearson had confessed to the kidnaping and murder.  This was a violation of due process because the state could not convince a magistrate that I had committed a crime.  The state never had probable cause to arrest me since

---

[6] Because the Court includes the following for the limited purpose of reciting Petitioner's claims, the Court has omitted portions of trial testimony Petitioner included with the supporting facts of some of his grounds for relief.  The omissions are indicated.

Pearson had confessed in December of 1994. This violated my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground three:**     Has the State tried to cover up anything in this case, was this structural error in a trial?

*Supporting facts*:    To this day I have never received any discovery in this case. I have written trial attorney, the Attorney General's Office and have never received any discovery in this case.  Undoubtedly the state has something to hide.  What little bit of discovery that I have came from the co-defendants.  How can anyone prove their innocence when the state refuses all discovery.  This [is] a structural error in a trial and must be reversed because of it.[7]

**Ground four**:     Did the prosecutor elicit false testimony from Danny Davis, did he know anything about this case, was he coerced into testifying?

*Supporting facts*:    Danny Davis was thrown into Broadriver CI and told to testify to the statement the police had fil[l]ed out in his name. He was threatened with a long prison term.  [omitted trial excerpts]

Danny Davis' testimony was told to him by the other sources such as the police or the prosecutor.  In open court this man was testifying that he was coerced into saying these things and that he has no memory of any of this.  Davis's testimony is in direct opposition to Ringo Pearson's confession that he killed Ms. Patterson within a few hours of her going missing.  Davis's testimony was perjury, coerced by twenty years in prison.  The state coerced an alcoholic man into testify[ing] to something that the police wrote up is a due process violation and should be reversed because the prosecutor elicited false testimony from a man who knew nothing about the crime.  This was a violation of my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground five**:     Was Jeffrey Graham coerced and intimidated into making a statement, was this inadmissible hearsay, was anything that Graham testified to true?

*Supporting facts*:    Graham admitted that he was coerced into signing the statement the police filled out.  [omitted trial excerpts]

Graham's testimony is in direct opposition to Ringo Pearson's confession that he alone killed Ms. Patterson. The police coercing a

---

[7] Petitioner lists the discovery he claims the State denied him [Doc. 1 at 16–17], which is omitted for purpose of reciting Petitioner's claims.

citizen into making statement that would help convict anyone is  []
unconstitutional. A prosecutor eliciting false statements is a due
process violation because anything Graham testified to was perjury
or inadmissible hearsay.  This is proof that witnesses in this case
have been coerced.  Trial attorney should have had this testimony
impeached because of it being coerced.  Graham's testimony is a
violation of my Fo[u]rth, Fifth, Sixth, and Fourteenth Amendment to a
fair trial.

**Ground six:**     Can the State prove beyond a reasonable doubt that the victim had
been raped, was this used as prejudicial evidence to help obtain a
conviction, did the lack of DNA evidence prove that she was not
raped, did this make DNA a real issue?

*Supporting facts*:     The state can not prove beyond a reasonable doubt that Ms[.]
Patterson had been raped.  [omitted trial testimony]  Undoubtedly
Conradi did not know that Ms. Patterson had been found with her
buttocks sticking up.  [omitted trial excerpts]  This is in direct
opposition to the fact that the body was found with the buttocks out of
the water.  There should have been DNA, since the air temperature
was cool or unless she had been in the water since November 12,
1994, when Pearson confessed to having murdered her that night.
When the buttocks are sticking up into the air there is no way the
fluids leaked out, some seminal fluids would have remained.  There
should have been DNA evidence from this fact.  This would make the
lack of DNA proof of no rape.  There is no direct testimony by anyone
that anyone saw her get raped.  The state just piled inference upon
inference that she had been raped. The State must prove beyond a
reasonable doubt that she had been raped.  There is no evidence of
this fact.  The State used this to prejudice the defendants because if
she had not been raped, this blows the state[']s whole case.  This was
ineffective assistance of counsel, prosecutor misconduct because
there is no evidence or proof that she was raped.  This violated my
Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground seven:**     Was the Sheriff's testimony inadmissible hearsay, were the notes
written by the Sheriff, can he testify to someone else's [n]otes, did the
state hide anything by not producing these notes, was this a Brady
violation, was this a confrontation issue?

*Supporting facts*:     [omitted trial excerpts]  The Sheriff is not allowed to have someone
else write a transcript and have everyone testify from it.  This would
be a due process violation due to the fact the person that took the
notes never came forward to authenticate the notes or swore they
were true and correct.  Making this a confrontation issue and a staged

trial. The Sheriff's testimony would also be inadmissible hearsay since he did not write the notes and may not understand them. The Sheriff's testimony would be no more than rumors. This type of testimony denies me the right to properly cross examine the Sheriff. The Court not allowing trial attorneys to have a copy of the notes was also judicial misconduct. This was ineffective assistance of counsel because he should have objected to the Sheriff's testimony and the COURT not producing copies of the notes under the discovery rule. This violated my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground eight:**    Did the Prosecutor destroy the character and honor of the Petitioner and infect the entire trial with bias and prejudice against the Petitioner by accusing him of being a devil, a sinner, or just mean, the Prosecutor accused the Petitioner of being all of these because he was faithful at going to church, was this a due process violation?

*Supporting facts*:    The Petitioner had gone to church faithfully since he was a child, he was an usher. The Prosecutor totally destroyed his honor and character, when Reverend Lebby tried to demonstrate Petitioner's faithfulness to the church, by calling him a devil, a sinner and or just mean. The Petitioner had never had so much as a speeding ticket and yet the Prosecutor had called him these evil names during Petitioner's testimony and during Rev. Lebby's testimony. This was slander and character assassination. [omitted trial excerpts]

During the closing argument, the Prosecutor used this slander again to destroy the Petitioner's good name and character. [omitted trial excerpts] This prosecutor has attac[k]ed this church and its members as devils, this would shock the universal conscience of any good person. This whole thing was just a ploy to destroy each and every defendant's character and obtain a conviction at any cost. Trial attorney never properly objected to the prosecutor's misconduct, this was a due process violation and ineffective assistance of counsel. This violated my First, Fourth, Fifth, Sixth, and Fourteenth Amendment right's to a fair trial.

**Ground nine**:    Did the Prosecutor vouch for the state's witnesses in violation of due process, violating my Fifth, Sixth and the Fourteenth Amendments?

*Supporting facts*:    [omitted trial excerpts] These two witnesses were both white against black defendants. Both were given reduced sentences for the[ir] testimony. Both were threatened with the death penalty and testified to get out of them. This is a due process violation because both of these co-defendants were coerced into making these statements. A prosecutor eliciting false testimony is a due process violation and

10

should be reversed on those grounds and trial attorney never objected making it ineffective assistance of counsel. This was a violation of my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground ten**:    Did the prosecutor's closing argument inflame the jury's passion, did he say this to obtain a conviction in violation of due process?

*Supporting facts*:    [omitted trial excerpts]  There is absolutely no evidence that Ms. Patterson was ever raped by anybody. Here the Prosecutor is trying to inflame the passion of the jury.  Then he attempted to enter this into the minds of the jury that a rape had happened, when there is no supporting evidence except two alcoholics with memory loss, who were compelled to testify from what the police wrote down true or not. This prejudicial statement made by the prosecutor was in direct opposition to Ringo Pearson's confession that he alone murdered and threw her body into the river on November 12, 1994.  The prosecutor may not appeal to the passion of the jury.  If the remarks are intended to lead them into convicting the accused for improper reasons, then this is a due process violation and the sentence should be reversed due to this.   This was ineffective assistance of counsel for not objecting and prosecutor misconduct for inflaming the passion of the jury.    This violated my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground eleven**:    Did the Court have subject matter jurisdiction, was the indictment rubber stamped, was this a violation of due process?

*Supporting facts*:    The Petitioner was arrested in March of 1995, no arrest warrant was ever issued.  On December 30, 1996, the Prosecutor allegedly went before the Grand Jury with an indictment and with out an arrest warrant.  How did the Prosecutor obtain an indictment without an arrest warrant? Undoubtedly he rubber stamped the indictment.  That was a twenty-one months delay between warrantless arrest and indictment.  Petitioner was out on bond until the day of the trial, he was never informed of what his charges were until the day of the trial. The indictment was never filed with the Court until 3/17/97, one week after the trial.[8]

The state took over two years to fabricate evidence in this case.  The state lost subject matter jurisdiction because of the above reasons.   It was rubber stamped because no witness signed the

---

[8] Petitioner discusses South Carolina law with respect to arrest warrants and indictments [Doc. 1 at 16–17], which is omitted for purpose of reciting Petitioner's claims.

indictment.  There is no way this case went before a grand jury because the state lacked evidence at trial.  This makes the indictment a forged document, the using forged documents is a due process violation.  It is also the state not treating all criminals alike or not equal protection under the law.

There are three separate class A felonies on this one indictment.  There should have been only class a felony per indictment.  This also denied the state subject matter jurisdiction.

Trial attorney was ineffective for not bring[ing] this before the jury, if the jury had known that the state was using forged documents, they may have not convicted the Petitioner.  The State uses rule three to over turn cases just when it suites them, this is not equal protection under the law.  The state does not treat every one the same under it[]s own rules of court making this a due process violation, violation of the Fourteenth Amendment.   The Prosecutor using forged indictment is the same thing as using perjury in a criminal case.  All of these fact violated my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial and the case must be reversed on due process grounds.

**Ground twelve:**    Was Bobby Ranson's testimony true, was it believable, was he coerced by the Prosecutor threatening him with the death penalty, was the death penalty shocking to the universal conscience since Bobby was paralyzed from the neck down?

*Supporting facts*:    [omitted trial excerpts]   Here a man paralyzed and alcoholic who crawls into water that is three or four feet high to look at a body.  Does that seem any where near true or possible.  That water would have washed him away like he was a rag doll.  He was lying to get the death penalty off of him.  [omitted trial excerpts]  Bobby had been compelled to testify to what the police officers wrote down, true or not.  Ranson had quite a drug problem.  [omitted trial excerpts]

[omitted trial excerpts]  This statement was perjury and should have been objected to and his testimony impeached.

[omitted trial excerpts]   More perjury, Bobby Ranson was testifying to stay off of deathrow.  Any one could be compelled to testify in a situation like this.  He is paralyzed alcoholic and drug addict with mental problems and he was just trying to stay alive.  It is shocking to the universal conscience that a prosecutor would threaten a paralyzed man to confess and to testify.  SLED plied this man with liquor to get a statement out of him.  [omitted trial excerpts]

If he can not open a bottle, how could he crawl into a rain soaked river and not get washed away.  The State coerced a paralyzed man into testifying to obtain a conviction.  Any body in this situation would do the same thing.  The state can not prove any thing

12

that Ranson testified to.  The state using this type of testimony is a due process violation and prosecutor misconduct. My attorney should have objected to this testimony and had Ranson's testimony impeached.  This violated my Fourth, Fifth, Sixth and Fourteenth Amendment rights.

**Ground thirteen**:    When did the "pig party" really happen.  did the state use leading questions to convince the jury into believing that the pig party happened in November, was this a variance of indictment since the pig party happened in September?

*Supporting facts*:    According to the state this pig party happened on November 12, 1994.  Only two people actually testified to a date that the party actually happened.  [omitted trial excerpts] This statement was very material to the police's fabricating evidence.

No where on the transcripts that any witness actually testified that the party happened on November 12, 1994 except by being asked leading questions by prosecutor.  Here a defendant has testified that he was told by the police what date the "pig party" happened.  The state is saying it happened [o]n November 12th, but one of the state[']s primary witness[es] has testified that happened in "probably September of something like that".  The state fabricated evidence to obtain a conviction.  The state can not prove beyond a reason[able] doubt that the "pig party" happened in November blowing the state's whole case.  This testimony was in direct opposition to Ringo Pearson's confession.   This was variance of indictment because if the pig party happened in September and the State has tried to prove that it happened in November that would be variance of indictment.  This was ineffective assistance of counsel for not trying to make the state prove the date of the party exactly.  This was a violation of my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground fourteen**:    No one actually saw the victim being murdered, raped, and[/]or kidnap[]ed, the arresting officers, Knight and Jacobs, wrote all of the statements that the co-defendants testified to, they should have been called to testify, they are the main accusers in this case?

*Supporting facts*:    See Tr-1577 L-3 Mr. Knight, SLED agent here and Mr. Jacobs (never testified).  Since Jeffrey Grahm, Danny Davis, and Bobby Ranson testified to the statements that they allegedly gave to these officers.  These officers wrote out these statements.  They are the actual accusers in this case.  They should have been called to the stand and forced to testify.  They should have been forced to produce what evidence they had that showed probable cause to arrest Petitioner

13

without an arrest warrant.  According to Jeffrey Graham and Danny Davis these officers actually intimidated them in to making those statements.  According to Bobby Ranson they opened his liquor several times so he could get drunk.  This is a major confrontation issue since these officers are the accusers.  The co-defendants accused them of intimidating the officers into signing statements the officers wrote.  1) Did they intimidate any of the co-defendants?  2) Were these statements actually what the people actually said?  3) Had any of the statements been coerced?  4) Did the sheriff actually find the earring in the pile of ashes at the old house?  5) Did Ringo Pearson confess and what did he confess to?  6) Did the officers fabricate any part of the case?    The Sixth and Fourteenth Amendments requires fact to face confrontation [of] your accuser.  This was ineffective assistance of counsel for not calling either one of the officers to testify about what they found out in the[ir] investigation and explain why Petitioner was arrested and charged. Th[is] violated my Fourth, Fifth, Sixth, and[/]or Fourteenth Amendment rights to a fair trial, and the conviction should be over turned due to this constitutional investigation.

**Ground fifteen:**     Did the Prosecutor use perjury by Gracie and Robert Graham, did the Prosecutor make a deal to give this testimony, was it inadmissible hearsay, was this an unconstitutional presumption[], did the police tell the Grahams the dates?

*Supporting facts*:     [omitted trial excerpts]   They could not get the[ir] story together making both of the[ir] statements either perjury or inadmissible hearsay.

Robert and his mother are contradicting each other.  They are both in contradiction to Ringo Pearson's confession, that he alone killed and threw the body in the river within a few hours of her going missing.

The Prosecutor used that girl, a girl, some girl, the girl, a girl, this girl, no girl, and girl quite a few times during Gracie Graham's testimony: [omitted trial transcript citations].  This is a prosecutor allowing the jury to assuming that the girl was Ms. Patterson.  This does not prove that the girl was Ms. Patterson.  There are about 200 million women and girls in America, which one were they testifying to?  No where in this trial does any body actually testify that they saw Ms. Patterson, just a "girl"

[omitted trial excerpts]

After this testimony the judge gave Robert Graham an extremely light sentence [of] 90 days, 1500 hours of community service and three years probation, everyone else was given life sentences.  This was a coached testimony and the mother and son

could not get the[ir] stor[i]es together. Robert found out from his mother, Gracie. Gracie allegedly found out from Robert. This testimony was inadmissible hearsay because they both said the other one said it first. The police put the dates into the[ir] statements. Robert was given a very short sentence for his testimony and the judge stated such while sentencing him. Next the attorneys used the "girl" not Ms. Patterson, so they could have been talking about any girl. The government will not stand for a conviction based on tainted testimony and[/]or evidence, the Graham's testimony could have been talking about any girl. Trial attorney was ineffective for not objecting to both Graham's testimony. This was staged testimony because the judge gave Robert a reduced sentence and Prosecutor misconduct because of the deal for this testimony. Robert and Gracie Graham's testimony violated my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground sixteen**:   Did the state violate due process by not having a public trial, so the judge and prosecutor could abuse judicial power?

*Supporting facts*:   The Petitioner had a private trial the public was not allowed to attend. The Prosecutor used staged testimony and le[]d the witnesses into testifying about statements made by the police. If the public had been allow[e]d to attend the trial, the judge would have been forced to drop the rape charge due to lack of evidence. The Sixth and Fourteenth Amendments entitle me to have a public trial. So that the Courts have to obey the rules of fair play and so that justice will be done. A private trial is a structural error in a trial and demands automatic reversal. This was ineffective assistance of counsel, prosecutor misconduct, and judicial misconduct. This trial violated my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground seventeen**: Ringo Pearson confessed to Officer Jerry Starnes on December 1, 1994, Starnes also accused the Petitioner of these crimes, Starnes was not called to testify, this was a violation of due process, a confrontation issue, and prosecutor misconduct for not calling Starnes to testify.

*Supporting facts*:   Petitioner was accused of murder, rape, and kidnap[]ing Ms. Patterson. Officer Starnes knew that Pearson had confessed to the kidnap[]ing and murder of Patterson within a few hours of her going missing. He also knew that none of the state[']s theory of the case was true. Starnes should have been called to the stand and forced to testify to Pearson's confession and authenticate the confession. Starnes['s] testimony would have proven that Petitioner was innocen[t] of the charges. His testimony was material. The suppression of

15

material evidence in a criminal case is a structural error and demands reversal. This was ineffective assistance of counsel and prosecutor misconduct. This violated my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground eighteen**:    Did the Prosecutor violate due process by leading the South Carolina Supreme Court into believing that an arrest warrant had been issued by using the wrong indictment in Petitioner's transcripts?

*Supporting facts*:    [omitted trial transcript references]   There is no arrest warrant anywhere to be found anywhere in the transcript for Leroy Staton. [omitted trial transcript references] [T]he Prosecutor used Alphonso Staton's indictment with arrest warrant numbers. The South Carolina Supreme Court denied Petitioner relief on the grounds that the indictment had an arrest warrant number. The Court did not look at the indictment in a constitutional manner and did not properly check the names and arrest warrant or indictment numbers. Appellant defense should have brought this before the S.C[.] Supreme Court. This was also a subject matter jurisdiction claim with no arrest warrant to go with the indictment. This is the Prosecutor misleading the Supreme Court. This is not a complete or truthful or reliable transcript, the state using perjur[]ed documents. This was ineffective assistance of Appellant counsel and prosecutor misconduct. This violated my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground nineteen**:    Did Officer Starnes set the Petitioner up to these charges to cover-up the fact that he was molesting young children?

*Supporting facts*:    In April of 2006 Officer Jerry Starnes was charged with three counts of committing a lewd act on a minor under the age of fourteen and one count of lewd act on a minor under sixteen. In February 2009 he pled guilty and was given five years probation and he is required to register as a sex offender. If the jury had known of this type of behavior, the jury may not have convicted the Petitioner because of this tainted officer's involvement in this case. This was a due process violation because of this officer's bad character and the Sheriff may have used his notes to testify from. This violated my Fourth, Fifth, Sixth and Fourteenth Amendment Rights to a fair.

**Ground twenty**:    Did the Prosecutor elicit false testimony from the witnesses, by citing the date of the kidnap[]ing, was this a violation of due process by leading the witnesses?

*Supporting facts*:     [omitted trial excerpts]   The prosecutor leading a witness[] is not trustworthy testimony and was ineffective assistance of counsel for not properly objecting and explaining to the jury that this was unconstitutional and violated due process.  This was a violation on my Fourth, Fifth, Sixth and Fourteenth Amendment rights to a fair trial.

**Ground twenty-one**:     Was this whole case a due process violation, did the state use Ringo Pearson's confession to help convict any and all co-defendants, is this a severance issue and a discovery issue violation?

*Supporting facts*:     Ringo Pearson kidnapped and murdered Ms. Patterson on November 12, 1994, in his confession he did that alone within hours of her going missing.  The state accused Petitioner of being a co-defendant but Ringo never testified to any of this.  The state and several of the trial attorneys had told the jury of Ringo's confession but never went into any details at all.   Since this was a joint trial and several of the attorneys had mentioned to the jury that Ringo had confessed.  This le[]d the jury to unconstitutionally believe that conspiracy had happened.  Not only did the state cover up Ringo's confession but used the fact that he confessed to help obtain a conviction in violation of due process.  The state using the confession to help obtain a conviction but withholding a key part of the confession violated my Fourth, Fifth, Sixth, and Fourteenth Amendment Rights to a fair trial.

**Ground twenty-two**:     Did the prosecutor violate due process by using Jerry[] Ward's testimony, was it perjury and was it also inadmissible hearsay?

*Supporting facts*:     [omitted trial excerpts]  The state never gave a reason for Jerry Ward being at Broadriver CI.   The Prosecutor stated that he had no charges.  If he had no charges, why was he in prison?  Petitioner has not been given any discovery after thirteen years in prison.  In this statement, the Prosecutor is trying to give Jerry Ward's testimony credibility in violation of due process.   Since the Petitioner has received no discovery, the Petitioner is claiming that Ward was indeed given some incentive to testify making this Prosecutor misconduct because the State can not prove beyond a reasonable doubt that Walls, Pearson and Ward were at Broadriver at the same time.  The State has not proved that Ringo Pearson was at Broadriver at the same time as Ward.  None of the witnesses mentioned ever knowing Jerry Ward during the[ir] testimony.  This issue is pending for a complete copy of discovery.  Jerry Ward's testimony is contradiction to Ringo Pearson's confession that he alone kidnap[]ed and murdered Ms. Patterson.  There is no evidence any where that the victim was ever raped by anyone.  This was ineffective assistance of Counsel for

17

not objecting to Ward's testimony and Prosecutor misconduct for eliciting false testimony[.]  Jerry Ward's testimony was inadmissable hearsay, perjury that violated my Fourth, Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground twenty-three**:    Did the local prosecutor have a conflict of interest because of Pearson's confession, was a special prosecutor brought in from Horry County to violate due process?

*Supporting facts*:    Danny Davis and Bobby Ranson had been arrested and were at Broadriver CI without a trial in violation of due process.  After Mr. Wilson, the out of the district prosecutor came in, he put the death penalty on Danny Davis and Bobby Ranson.  They had both been at Broadriver CI claiming their innocence when they were threatened with the death penalty.  Bobby Ranson is paralyzed from the chest down and could not have possibl[y] done anything in this case.  By putting the death penalty on both of them forcing them into confessing.  Making them plea bargain with the state, this was a due process violation because this out of district Prosecutor did not have to answer to the public of Marlboro County.  The Petitioner had met Davis or Ranson only once before the trial at the Pig foot cook-out in September of 1994.  The police concocted the statements for Davis and Ranson and the Prosecutor forced them to testify to the statements by using the death penalty.  This prosecutor was seeking a conviction and not justice.  A Prosecutor coercing perjur[]ed testimony is a due process violation and demands reversal of the conviction.  This violated my Fifth, Sixth, and Fourteenth Amendment rights to a fair trial.

**Ground twenty-four**:    Did the South Carolina Supreme Court dismiss[] my State Habeas Corpus in an unconstitutional manner?

*Supporting facts*:    The S.C. Supreme Court dismissed the habeas corpus by stating that "in this setting, it was a fair trial[.]"

In other words the S.C. Supreme Court dismissed the case in an unconstitutional or unreasonable manner in violation of due process of law.  They did not rule upon state and federal law in reasonable or just manner so that justice would be done.  The U.S. Supreme Court has ruled that every element of a crime must be proven beyond a reasonable doubt.  The Supreme Court did not even rule upon that issue.  The Petitioner had over twenty constitutional issues and the S.C. Supreme Court did not properly rule upon any of them.  This is not equal protection under the law, equal protection means that they must treat all prisoners alike.  If the State can not prove every element of a crime beyond a reasonable doubt, then the

18

court must reverse the conviction and release the Petitioner from confinement. The State Supreme Court violated my Fifth, Sixth, and Fourteenth Amendment rights to a fair trial or equal treatment under the law.

As previously stated, Respondent filed a motion for summary judgment on June 3, 2011 [Doc. 22, 23], which is now ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se Petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual

20

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to

the non-movant, he must produce existence of a factual dispute on every element essential

to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28

U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*,

134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas

corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

21

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

22

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (i) there is an absence of available State corrective process; or
>>
>>        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

25

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v.*

26

*Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.    A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.   *Murray*, 477 U.S. at 492.   To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

27

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).

28

Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied.  *Id.* at 2563.

## DISCUSSION

Respondent contends the Petition is time-barred pursuant to § 2244(d)(1).  [Doc. 23 at 36–39.]  The Court agrees.

**Expiration of Limitations Period**

The South Carolina Supreme Court issued remittitur in Petitioner's direct appeal on November 25, 2002.  [Doc. 23-31.]  Consequently, Petitioner had one year from February 24, 2003, ninety days after remittitur was issued in his direct appeal, to file a federal habeas petition.   28 U.S.C. § 2244(d)(1); *Holland*, 130 S. Ct. at 2558; *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).  Petitioner filed an application for state post-conviction review on November 19, 2003 [App. 1743], such that 268 days of the one-year limitations period had expired before Petitioner filed his PCR application.  The one-year period in which to file a federal habeas petition is tolled during the pendency of an application for post-conviction or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and Respondent concedes the statute of limitations was tolled during the period the PCR application was pending—from November 19, 2003 until April 8, 2009, when the South Carolina Supreme Court issued remittitur in the appeal from the denial of Petitioner's PCR application [Doc. 23 at 37].[10]  Therefore, the one-year limitations period

_____

[10] As noted above, Petitioner filed a federal petition for a writ of habeas corpus in 2001, which was dismissed without prejudice before remittitur was issued in Petitioner's direct appeal.  [Doc. 23 at 12 n.7]; *Staton v. Harrison*, 2:01-cv-2487-PMD.  Also, the limitations period is not tolled during the pendency of federal habeas actions.  28 U.S.C. § 2244(d)(2) (stating that § 2244(d)(2) tolls the limitations period during the time "a properly filed application for *State* post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" (emphasis added)); *Duncan v. Walker*, 533 U.S. 167, 172, 181–82 (2001) (holding that an application for federal habeas review is not an application for State post-conviction or other

began to run again on April 9, 2009 and expired ninety-seven days later on July 15, 2009.

Petitioner filed a petition for a writ of habeas corpus in the South Carolina Supreme Court on March 18, 2010 [Doc. 23-40], well after the limitations period ran. Further, the South Carolina Supreme Court determined the petition did not demonstrate a violation of Petitioner's rights sufficient to warrant habeas corpus relief, and the court denied the petition. [Doc. 23-41.] Therefore, Petitioner's petition for habeas corpus filed in state court did not toll the one-year AEDPA limitations period. As a result, the Petition—filed on March 24, 2011, more than twenty months after the expiration of the limitations period—is time-barred.

**Equitable Tolling**

Petitioner failed to demonstrate he is entitled to equitable tolling. The limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418). Liberally construing the Petition and Petitioner's response in opposition to Respondent's motion for summary judgment, the Court concludes Petitioner alleges he is entitled to equitable tolling because an "unconstitutional impediment created by the state" has prevented the statute of limitations from beginning to run. [Doc. 33 at 19.] Specifically, Petitioner argues the State refused to provide discovery and he has (1) been locked in his cell for twelve to thirteen days at a time for unknown reasons, (2) mental problems stemming from the lack of a proper diet, and (3) been unable to get to the law library, which

---

collateral review within the meaning of § 2244(d)(2)). Consequently, Petitioner's previous federal habeas filing has no bearing on the tolling of the limitations period.

is inadequate.  [*Id.*]  Petitioner further asserts he should be excused from the "procedural

bar and abuse of writ by showing cause and prejudice and[/]or actual innocence."[11]  [*Id.*]

In *Harris v. Hutchinson*, the Fourth Circuit noted that equitable tolling "has been

applied in 'two generally distinct kinds of situations.   In the first, the plaintiffs were

prevented from asserting their claims by some kind of wrongful conduct on the part of the

defendant.  In the second, extraordinary circumstances beyond plaintiffs' control made it

impossible to file the claims on time.'"  209 F.3d 325, 330 (4th Cir. 2000) (quoting *Alvarez-

Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).  The court stated,

> [A]ny invocation of equity to relieve the strict application of a
> statute of limitations must be guarded and infrequent, lest
> circumstances of individualized hardship supplant the rules of
> clearly drafted statutes.   To apply equity generously would
> loose the rule of law to whims about the adequacy of excuses,
> divergent responses to claims of hardship, and subjective
> notions of fair accommodation. We believe, therefore, that any
> resort to equity must be reserved for those rare instances
> where—due to circumstances external to the party's own
> conduct—it would be unconscionable to enforce the limitation
> period against the party and gross injustice would result.
>
> . . .
>
> Harris argues that equitable considerations justify tolling
> in his case because the missed deadline was the result of an
> innocent misreading of the statutory provision by his counsel.
> While we agree that the mistake by Harris' counsel appears to
> have been innocent, we cannot say that the lawyer's mistake
> in    interpreting    a    statutory    provision    constitutes    that
> extraordinary circumstance external to Harris that would justify
> equitable tolling.

*Id.* (internal quotation marks and citations omitted).

---

[11] Other than making this assertion of "cause and prejudice and[/]or actual innocence," Petitioner has
provided the Court with no basis to consider whether "cause" exists for his failure to timely file.

Upon review, the Court finds Petitioner has failed to show any extraordinary circumstances beyond his control or external to his own conduct that prevented him from filing within the limitations period or that Respondents contributed in any way to his delay in filing his Petition.  While Petitioner alleges the State has deprived him of discovery, the Court notes Petitioner was represented at trial, on direct appeal, at the PCR stage, and on appeal of the denial of his PCR application, and none of these attorneys indicated they lacked appropriate discovery.  Based on the foregoing, the Court finds Petitioner is not entitled to equitable tolling because no extraordinary circumstance prevented Petitioner from timely filing the Petition.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion [22] for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 18, 2011
Greenville, South Carolina